IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

HILDA S. RIVERA,

      Plaintiff,

    v.

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

HONORABLE JEROME B. SIMANDLE

CIVIL NO. 07-1912 (JBS)

**OPINION**

APPEARANCES:

Jason L. Thompson, Esq.
3600 Horizon Blvd., Ste. 150
Trevose, PA 19053
    Attorney for Plaintiff

Christopher J. Christie
UNITED STATES ATTORNEY
    By:  Tomasina DiGrigoli
        Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
26 Federal Plaza, Suite 3904
New York, NY 10278
    Attorney for Defendant

**SIMANDLE**, District Judge:

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration denying the application of Claimant Hilda S. Rivera ("Ms. Rivera" or "Claimant") for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act.  See 42 U.S.C. §§ 401-34.  Ms. Rivera filed for SSI benefits on February 22, 2002, alleging her disability onset date as August 18, 2000, and claiming that she was unable to work due to depression, anxiety, back pain, and ankle pain. (R. at 71.)  Claimant urges this Court to reverse the decision of the Commissioner and order an award of benefits or, in the alternative, remand her claim to the Commissioner for a proper determination.  The Commissioner also requests an order reversing his decision and remanding the case for further proceedings.

At issue in this case is whether there is substantial evidence in the record to support the Administrative Law Judge's ("ALJ") determinations that Claimant's ankle impairment was not severe, that Claimant had the residual functional capacity for light work, and that Claimant could return to her past relevant work.  Also at issue are two procedural matters: whether the ALJ improperly omitted evidence of Claimant's spinal impairment submitted after the hearing but before the decision, and the proper scope of this Court's remand, if any.

The Court has considered the submissions of the parties pursuant to Local Civil Rule 9.1.  Because the ALJ's decision fails to adequately consider Claimant's testimony regarding ankle pain, omits probative portions of the testimony of two physicians without explanation in assessing Claimant's residual functional capacity, and fails to consider Claimant's testimony regarding

the actual demands of her past relevant work, the Court will vacate the Commissioner's decision and remand to the ALJ to reconsider his reasoning in accordance with the guidance set forth herein.  Second, the Court finds that the evidence of Claimant's spinal impairment was not timely submitted under the SSA regulations and Claimant has made no showing that warrants a remand to the Commissioner to consider new evidence as provided by Sentence Six of 42 U.S.C. § 405(g).  Finally, the ALJ's determinations on remand should be confined to Claimant's February 22, 2002 SSI application, as the subsequent December 2005 application is not properly before this Court.

I.    **BACKGROUND**

A.    **Procedural History**

On February 22, 2002, Claimant filed an application for Supplemental Security Income benefits, alleging that she was disabled as a result of depression, anxiety, back pain, and ankle pain.  (R. at 58-61, 71.)  The SSA denied her application initially on February 6, 2003.  (R. at 32-34.)  Claimant's application was denied on reconsideration on August 1, 2003.  (R. at 38-40.)  Claimant subsequently filed a timely Request for an Administrative Hearing on September 4, 2003.  (R. at 42.)  The hearing was held on  February 7, 2005 before an administrative law judge ("ALJ").  (R. at 362-384.)  The ALJ issued a decision

3

on March 10, 2005, ruling that Claimant was not disabled.  (R. at 14-27.)

Claimant requested review by the Appeals Council on March 30, 2005, (R. at 12-13), and the Appeals Council denied review on November 17, 2005. (R. at 309-312.)  Claimant requested that the Appeals Council reconsider its denial of review on January 19, 2006 and submitted additional medical evidence.  (R. at 313-315.) On February 22, 2007, the Appeals Council set aside its first decision to consider the additional evidence, and again denied Claimant's request for review, stating that the new evidence did not provide a basis for changing the ALJ's decision.  (R. at 5-9.)  The ALJ's decision therefore became the final decision of the Commissioner.  (Id.)

Having exhausted her administrative remedies, Claimant timely filed the present action with this Court on April 24, 2007, seeking reversal of the Commissioner's determination and an award of benefits, or in the alternative, a remand for a new hearing.  The Commissioner also requests a remand for further proceedings, but intends to reopen a subsequent claim in which Claimant was found disabled beginning December 1, 2005, and instruct the Administrative Law Judge to resolve inconsistencies between evidence in the record pertaining to the instant claim and the evidence obtained in connection with the subsequent

4

claim, re-adjudicate the entire period, and issue a new decision.

**B.    Facts**

    1.    <u>ALJ's Findings</u>

On March 10, 2005, ALJ George C. Yatron issued a decision ruling that Claimant was not entitled to SSI because she was not disabled.  (R. at 14-27.)  The ALJ noted that Claimant was not engaged in substantial gainful activity since her date of application on February 22, 2002.  (R. at 24.)  He found that although Claimant suffers from anxiety disorder, a pulled back muscle, and depressive disorder, impairments that are severe, these impairments did not meet or equal any of the impairments listed in Appendix 1, Subpart P, Regulations as set forth in 20 C.F.R. §§ 404.1521 and 416.921.  (<u>Id.</u>)  He found that Claimant's history of drug and alcohol addiction, in remission since November 2002, was a non-severe impairment.  (<u>Id.</u>)  He further found that Claimant's allegations with regard to her limitations were not entirely credible because they were not supported by the objective clinical evidence.  (R. at 25.)

The ALJ next determined that Claimant retained the Residual Functional Capacity ("RFC") to perform a range of light work as defined in 20 C.F.R. § 404.1567, finding her able to lift/carry up to twenty pounds occasionally, ten pounds frequently, stand and/or walk (with normal breaks) approximately six hours in an eight-hour work day, and sit (with normal breaks) approximately

six hours in an eight-hour work day. (Id.)  The ALJ further
found that Claimant's past relevant work as a retail cashier,
categorized in the Dictionary of Occupational Titles # 211.462-
014 as "light, low level, semi-skilled", did not require
performance of work-related activities precluded by Claimant's
RFC. (Id.)  Finally, the ALJ concluded that Claimant's medically
determinable impairments did not prevent her from performing her
past relevant work as a retail cashier at the light exertion
level. (Id.)  Therefore, the ALJ determined that Claimant was
not disabled. (Id.)

2.   Claimant's Testimony

Claimant testified at her Administrative Hearing on February
7, 2005 that she was forty-nine years old, five feet and four
inches tall, and weighed 145 pounds. (R. at 364-65.)  She
testified that she is separated and living with her mother and
her youngest son, age fifteen. (R. at 365.)  Claimant further
testified that a friend drove her to the hearing, as she does not
know how to drive and has never had a license. (R. at 365-66.)

Regarding her education and work history, Claimant testified
that she has a GED and receives welfare. (R. at 365.)  She
testified that she last worked in August of 2000 as a cashier at
a Family Dollar Store. (R. at 366.)  Claimant left that job
after fracturing her left ankle in a fall, (R. at 377), because
she was told she could not work with her leg in a cast. (R. at

6

366.)  Regarding her daily activities, Claimant testified that she does not participate in any sports or hobbies and does not exercise due to pain.  (R. at 377.)  She testified that she does not socialize and attends church rarely due to lack of transportation and her back injury.  (R. at 366, 380.)  Claimant further testified that she does not garden or do yard work.  (R. at 366.)  Claimant was able to do light housework slowly due to back pain until September of 2004, when her back went out after she bent to pick something up from the floor.  (R. at 367-68.)  Claimant further testified that since that injury, she has not been doing housework and her son is helping to do it.  (R. at 376.)  She testified that cooking is a problem for her due to pain and she must sit often.  (R. at 376.)

Claimant testified that she smokes half a pack of cigarettes per day and does not drink alcohol.  (R. at 367.)  Claimant testified that she has had problems with drugs and alcohol in the past.  (Id.)  She testified that she relapsed in 2000 after she fractured her ankle because she was in pain and "they wouldn't give me any pain pills anymore for my leg."  (R. at 378.)  Claimant further testified that she was hospitalized at Ancora Psychiatric Hospital in 2002, and has undergone psychiatric therapy since then at Cumberland County Guidance Center.  (R. at 378, 374.)  She testified that she has not used any street drugs since 2002.  (R. at 374.)

Regarding her back pain, Claimant testified that she had been having pain since February of 2002, which worsened in September 2004 after she injured herself bending down. (R. at 368.) Her primary care physician, Dr. Rhyme, hospitalized her for eight days. (Id.) Claimant described her most comfortable position as a "cradle position, towards my right side, though, because the left hurts too much." (R. at 380.) Claimant testified that she cannot do much walking because of back pain and can sit for about a half hour before needing to lie down. (R. at 381-82.)

Regarding her ankle pain, Claimant testified that her left ankle always hurts, although the back pain is worse. (R. at 363.) She testified that the fracture healed slowly and she was in a cast for thirteen months. (Id.) She also used a bone growth machine, but the ankle never healed correctly. (R. at 377.) Claimant further testified that she cannot do much walking or go shopping at the mall because of ankle pain. (R. at 381.)

Claimant testified that she is currently taking MS Contin and Flexeril for her pain, and took Vioxx while in the hospital for her back injury. (R. at 370.) She said the MS Contin helps but does not eliminate pain, and she experiences constipation as a side effect. (Id.)

Regarding her depression and anxiety, Claimant testified that she has attempted to harm herself several times, but not

8

since ceasing drug use in 2002.  (R. at 376.)  Claimant said she is taking her depression medication as prescribed, which helps her deal with her thoughts of harming herself.  (R. at 374, 377.)

### 3.   Medical Evidence

#### a.   Claimant's Ankle Impairment

Claimant fractured her left ankle in a fall in front of her home in August of 2000.  (R. at 377.)  As her leg was in a cast, she could no longer work as a cashier at Family Dollar.  (R. at 366.)  Claimant wore the cast through April of 2001, then switched to a cast walker, and utilized a bone stimulation system for four months to aid in healing.  (R. at 113-14.)  Claimant's primary care physician, Dr. Timothy Rhyme, noted in March of 2001 that Claimant was still experiencing pain and wanted a second opinion.  (R. at 166.)  Dr. Rhyme prescribed several pain medications for Claimant's ankle and back pain over the course of his treatment.[1]  (R. at 169.)

Dr. Bernardini, an orthopedist, examined Claimant's left ankle injury on three occasions between April and September of 2001. (R. at 119-20.)  He believed that the fracture had healed, although Claimant continued to report pain and swelling.  (R. at 120.)  He recommended that Claimant gradually resume activities and exercise her ankle.  (Id.)  He noted that Claimant did not

---

[1]  These medications included Vicoprofen, Percocet, Ibuprofen, Skelaxin, and Darvocet.  (R. at 169.)

9

receive any physical therapy due to her lower back problem.
(Id.)

Dr. Mark Levitsky, an orthopedic surgeon, examined
Claimant's ankle on May 2, 2001. (R. at 113-114.) He noted
Claimant was complaining of constant pain in her ankle that had
worsened since wearing the cast walker. (Id.) His physical
examination showed that Claimant's ankle did dorsiflex[2] to the
neutral plane, plantar flexion[3] was to approximately 30 to 35
degrees, there was tenderness but no instability of the ankle,
and some slight swelling present. (Id.) Dr. Levitsky studied x-
rays of Claimant's ankle which revealed delayed union of the
distal fibular shaft[4] fracture. (Id.) He stated that this is a
very unusual complication of distal fibular fracture healing, and
suggested surgery. (R. at 114.) Claimant never had the surgery
according to the record. (R. at 180.) An x-ray from August 21,
2001 showed complete healing of the fracture with only minimal
deformity. (R. at 115.)

_____

[2] Dorsiflexion of the foot indicates movement backward, in
which the foot moves towards its top, or dorsum. Taber's
Cyclopedic Medical Dictionary 628 (20th ed. 2005).

[3] Plantar flexion is extension of the foot so that the
forepart is depressed with respect to the position of the ankle
(opposite of dorsiflexion). Taber's Cyclopedic Medical
Dictionary 1682 (20th ed. 2005).

[4] The distal fibula is the outer and smaller bone of the
leg from the ankle to the knee. Taber's Cyclopedic Medical
Dictionary 799 (20th ed. 2005).

10

Dr. Martin Kessler, an orthopedic consultant, examined Claimant on November 21, 2002 in connection with her SSI claim. (R. at 179-183.)  He also noted Claimant's chronic delayed union of the ankle fracture.  (R. at 183.)  He further noted Claimant's chronic pain from that injury and some restricted mobility in dorsiflexion and plantar flexion, but also noted she had good strength and no severe swelling or apparent instability in her ankle.  (Id.)  Dr. Kessler also requested an x-ray of Claimant's ankle on November 22, 2002, which showed no acute fracture or dislocation, but old post-traumatic deformity of the distal fibula and a posterior calcaneal spur.[5]  (R. at 186.)

b.    Claimant's Depression/Anxiety Impairment

Dr. Rhyme, Claimant's primary care physician, diagnosed Claimant with depression in September of 2001.  (R. at 167.)  He continued to treat Claimant for depression and anxiety up until and beyond the ALJ's decision of March 10, 2005, prescribing several medications for these conditions.[6] (R. at 241-51.)

Claimant was hospitalized at Ancora Psychiatric Hospital from February 27, 2002 - March 12, 2002.  (R. at 129-161.) Claimant's provisional diagnosis was a Substance Induced Mood

---

[5]  A calcaneal spur is a bony growth arising from the surface of the heel bone, often painful and resulting in disability.  Taber's Cyclopedic Medical Dictionary 2057 (20th ed. 2005).

[6]  These medications included Valium, Trazadone, and Prozac.  (R. at 250-51.)

11

Disorder and Borderline Personality Disorder. (Id.) Upon admission, Claimant stated that she was "tired of life" and "tired of living." (R. at 131.) Claimant reported during a Interdisciplinary Needs Assessment that she was raped by her father at age 16. (R. at 140.) Claimant's course of treatment included medications,[7] periodic visual observation for depressive ideations,[8] occupational therapy, recreational therapy, chemical abuse counseling, and AA and NA. (R. at 129.) Upon discharge, Claimant expressed her intent to attend outpatient alcohol and drug programs, and denied any homicidal or suicidal ideations. (R. at 130.)

Claimant received outpatient psychiatric treatment at Cumberland County Guidance Center from April 10, 2002 - December 21, 2004 (R. at 196-201, 228-232), and testified that she was still being treated there during her administrative hearing on February 7, 2005 (R. at 373). Claimant was seen by various physicians[9] at Cumberland, who note Claimant's continued depression, anxiety, and difficulty sleeping. (R. at 195-97,

---

[7] These medications included Valium, Klonopin, Zyprexa, and Prozac. (R. at 129.)

[8] Ideation is the process of thinking and the formation of ideas. Taber's Cyclopedic Medical Dictionary 1063 (20th ed. 2005).

[9] Many physicians' signatures on records from Cumberland are illegible.

12

228-230.)  The physicians prescribed several medications to treat these conditions.[10]

Dr. J. Theodore Brown, a psychiatric consultant, examined Claimant on November 11, 2002 in connection with her SSI claim. (R. at 175.)  He noted that Claimant reported several hospitalizations in the late 1990's for suicide attempts.  (Id.) Claimant also reported taking several medications for her depression and anxiety.[11]  (Id.)

Dr. Brown observed that Claimant's thought processes were coherent and goal directed, she was oriented to person, place, and time, and that her attention and concentration were intact. (R. at 177.)  Claimant was able to remember 3/3 objects immediately and 2/3 objects after five minutes, and able to repeat five digits forward and three digits backward.  (Id.) Claimant's intellectual functioning was borderline and her general fund of information was appropriate to experience.  (Id.)

Regarding Claimant's vocational functional capacities, Dr. Brown opined that

> the Claimant is able to follow and understand simple directions and perform simple rote tasks.  Ability to maintain attention and concentration, consistently perform simple

---

[10]  These medications included Prozac, Xanax, Trazadone, Neurontin, Lexapro, ProSom, and Remeron.  (R. at 195-97, 228-230.)

[11]  These medications included Remeron, Temazepam, Xanax, and Prozac.  (R. at 175.)

tasks independently, adequately relate to others, and appropriately deal with stress are compromised by symptoms of poor attention and concentration, distractions of hallucinations, and low threshold tolerance for any pressure or stress.

(Id.) Dr. Brown's ultimate diagnosis of Claimant was a major depressive disorder with psychotic features, anxiety disorder, and antisocial personality disorder. (R. at 178.)

> c.   Claimant's Lower Back/Spinal Impairment

In 1973, Claimant was hospitalized with a shattered pelvis after a car accident. (R. at 175.) At the time of her SSI application in 2002, Claimant still reported lower back pain, treated by Dr. Rhyme with medication. (R. at 163-66, 233-38.)

Dr. Martin Kessler, an orthopedic consultant, examined Claimant on November 21, 2002 in connection with her SSI claim. (R. at 179-183.) He assessed Claimant as having a chronic lumbar[12] strain/sprain and possible underlying degenerative disc and joint disease, but with a good range of motion in neck, shoulders and trunk. (R. at 183.) An x-ray and CT scan of Claimant's spine in 2003 were normal. (R. at 281, 276.)

Claimant was hospitalized by Dr. Rhyme from September 1 - 8, 2004 after she experienced increasing lower back pain, particularly on the left side. (R. at 259.) Claimant had bent

---

[12]  Lumbar refers to the lower part of the back between the thorax and pelvis. Taber's Cyclopedic Medical Dictionary 1267 (20th ed. 2005).

14

to pick something up from the floor and her "back went out."  (R. at 367.)  Dr. Rhyme reported that upon admission, Claimant was having difficulty ambulating and was in obvious distress.  (R. at 259.)  A CT Scan of Claimant's lumbar spine taken on September 1, 2004 showed partial fusion of the left sacroiliac joint[13] (R. at 262) but could not confirm that Claimant had a herniated disc (R. at 254).  Claimant improved gradually with physical and occupational therapy, and was prescribed several pain medications upon discharge.[14]  (Id.)

An x-ray of Claimant's lumbar spine from October 1, 2004 indicated that Claimant's left sacroiliac joint might be partially fused.  (R. at 227.)

In January of 2005, Dr. Rhyme referred Claimant to Dr. Steven Soloway, a rheumatologist.  (R. at 325.)  An x-ray taken January 13, 2005 showed fusion of the left sacroiliac joint and Dr. Soloway recorded an impression of spondylo arthropathy.[15] (R. at 327.)  After a second exam on January 24, 2005, Dr.

---

[13]  The sacroiliac joint is the joint between the sacrum (the triangular bone just below the lumbar vertebrae) and the ilium (the expansive superior portion of the hip bone). Dorland's Illustrated Medical Dictionary 1687, 1362 (31st ed. 2007).

[14]  These medications included Medrol, MS Contin, Vioxx, and Flexeril.  (R. at 254.)

[15]  Spondylo arthopathy refers generally to any disease of the joint involving the vertebrae. Taber's Cyclopedic Medical Dictionary 177, 2053 (20th ed. 2005).

Soloway noted several possibilities for the cause of Claimant's pain, joint fusion, and inflammation, including ankylosing spondylitis.[16]   (R. at 324.)   Dr. Soloway ordered an MRI on February 11, 2005, which confirmed partial fusion of the left sacroiliac joint.   (R. at 317.)   Claimant also saw Dr. Gary Metusow, a gastroenterologist, on February 1, 2005 to address her constipation, a side effect of her pain medication.   (R. at 298.)

### 4.   Vocational Evidence

#### a.   Physical Residual Functional Capacity Assessment - Dr. Michel

Dr. Michel completed a Physical Residual Functional Capacity ("RFC") Assessment Questionnaire on January 30, 2003.   (R. at 187-194.)   Regarding Claimant's Exertional Limitations, he opined that she was able to occasionally[17] lift twenty pounds, frequently[18] lift ten pounds, stand and/or walk with normal breaks for about six hours in an eight-hour workday, and sit with

---

[16]   Ankylosing spondylitis is a form of degenerative joint disease that affects the spine, producing pain and stiffness as a result of inflammation of the sacroiliac, intervertebral, and costovertebral joints.   May cause complete rigidity of the spine and thorax.   Dorland's Illustrated Medical Dictionary 1779 (31st ed. 2007).

[17]   For the purposes of the RFC Assessment, "occasionally" means occurring from very little up to one-third of an eight-hour workday (cumulative, not continuous).   (R. at 187.)

[18]   For the purposes of the RFC Assessment, "frequently" means occurring one-third to two-thirds of an eight-hour workday (cumulative, not continuous).   (R. at 187.)

normal breaks for about six hours in an eight-hour workday. (R. at 188.)  Dr. Michel based these conclusions in part on Dr. Bernardini's records regarding Claimant's ankle fracture, (R. at 119-120), and Dr. Kessler's finding that Claimant had good range of motion in her upper and lower extremities and a normal gait. (R. at 182.)

Regarding Claimant's Postural Limitations, Dr. Michel found Claimant able to frequently climb ramps and stairs, and occasionally climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. (R. at 189.)  Dr. Michel references x-rays of Claimant's lumbar region and ankle to support his conclusion. (Id.)

> b.    Mental Residual Functional Capacity
>        Assessment - Dr. Curran

Dr. Jane Curran completed a Psychiatric Review Technique Form on January 24, 2003. (R. at 210-223.)  In rating Claimant's Functional Limitations, Dr. Curran found Claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation,[19] each of extended duration. (R. at 220.)

---

[19] Decompensation in psychology is failure of defense mechanisms such as occurs in initial and subsequent episodes of acute mental illness. Taber's Cyclopedic Medical Dictionary 541 (20th ed. 2005).

17

Dr. Curran completed a Mental RFC Assessment on January 27, 2003. (R. at 202-206.) Dr. Curran found Claimant to be moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended periods. (Id.) In written comments regarding Claimant's RFC, Dr. Curran opined that "in the absence of substance abuse, claimant is capable of sustaining adequate concentration, pace, and persistence and could adapt and relate adequately to work in a low contact setting performing simple tasks." (R. at 205.)

c.   Physical Medical Source Statement - Dr. Rhyme

Dr. Rhyme, Claimant's primary care physician, completed a Physical Medical Source Statement of Functional Abilities and Limitations on February 4, 2005. (R. at 233-38.) Dr. Rhyme noted Claimant's depression and severe lower back pain and reported that "pain medication helps but impairs her ability to work." (R. at 233-34.) Dr. Rhyme opined that Claimant's pain was frequently severe enough to interfere with attention and concentration. (R. at 235.) Dr. Rhyme estimated that Claimant could continuously sit or stand for thirty minutes at a time, and that Claimant could sit for about two hours and stand/walk for about two hours total in an eight-hour working day with normal breaks. (R. at 236.) He further opined that Claimant would need

18

fifteen five- to ten-minute periods of walking around during an
eight-hour work day, and needed a job permitting her to shift
positions at will from sitting, standing, or walking.  (Id.)  He
found Claimant able to occasionally[20] carry less than ten pounds,
but never ten pounds or more.  (R. at 237.)

        d.    Claimant's Description of Demands of Past
              Relevant Work

    Claimant completed a SSA Disability Report in which she
described the duties and physical requirements of her former
cashier position at Family Dollar.  (R. at 72.)  Claimant
reported that she was required to stock shelves and empty trucks,
clean, sweep, and wash windows in addition to cashier duties.
(Id.)  Claimant further reported that she walked and stood for
six hours a day and climbed a ladder for two hours.  (Id.)
Claimant also reported that she was required to lift and carry
boxes of merchandise weighing twenty-five pounds frequently,[21]
and that the heaviest amount required was fifty pounds.  (Id.)

## II.  DISCUSSION

### A.    Standard of Review

#### 1.    Standard for Judicial Review of Commissioner's
          Decision

---

    [20]  For the purposes of the Medical Source Statement,
"occasionally" means less than 1/3 of the working day.  (R. at
237.)

    [21]  "Frequently" for the purposes of the SSA form means from
one-third to two-thirds of the workday.  (R. at 72.)

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a claimant's application for SSI. See Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995). A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable. See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Indeed, the "substantial evidence standard is deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence." Shaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999).

Some types of evidence will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence - particularly certain types of

evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health and Human Serv's, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).

A reviewing court has a duty to review the evidence in its totality. See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984). "[A] court must 'take into account whatever in the record fairly detracts from [a particular piece of evidence's] weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951))). The ALJ has a duty "to develop the record fully and fairly." Thompson v. Sullivan, 878 F.2d 1108, 1110 (8th Cir. 1989). The ALJ must set out a specific factual basis for each finding. Baerga v. Richardson, 500 F.2d 309 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975); Boot v. Heckler, 618 F. Supp. 76, 79 (D. Del. 1985). Simply referring to the "record" is insufficient. Abshire v. Bowen, 662 F. Supp. 8 (E.D. Pa. 1986). Additionally, the ALJ "must adequately explain in the record [the] reasons for rejecting or discrediting competent evidence," Ogden v. Bowen, 677 F. Supp 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)), including medical evidence and all non-medical evidence

21

presented.  <u>Burnett v. Comm'r of Soc. Sec.</u>, 220 F.3d 112, 122 (3d Cir. 2000).

The Third Circuit has held that access to the Commissioner's reasoning is essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

<u>Gober v. Matthews</u>, 574 F.2d 772, 776 (3d Cir. 1978). Nevertheless, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).

2.   <u>Standard for Supplemental Security Income under Title XVI of the Social Security Act</u>

The Social Security Act defines "disability" for purposes of entitlement to SSI benefits as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d), 1382c(a)(3)(B).  Under this definition, "a claimant qualifies as disabled only if [that claimant's] physical or mental impairments are of such severity that [the claimant] is

22

not only unable to do his [or her] previous work, but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §§ 423(d)(2)(A). Impairments must be considered in combination when making disability determinations. Burnam v. Schweiker, 682 F.2d 456, 458 (3d. Cir. 1982).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. 20 C.F.R. § 404.1520 (2006). This process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If able to still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not the claimant is capable of performing other work which exists in the national economy. If incapable, the claimant will be found "disabled." If capable, the claimant will be found "not disabled."

23

20 C.F.R. § 404.1520(b)-(f).  Entitlement to benefits is therefore dependent upon a finding the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983).  In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence.  Id.  In the final step, the Commissioner bears the burden of proving that work is available for the claimant: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform."  Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987) (citing Chicager v. Califano, 574 F.2d 161 (3d Cir. 1978)).

> 3.   Analysis
>
>> a.   Whether the ALJ Improperly Characterized Claimant's Ankle Impairment as "Not Severe"

The Claimant argues that the ALJ erroneously failed to find her ankle impairment to be "severe" at step 2 of the sequential evaluation.  (R. at 18.)  This Court agrees that the ALJ did not properly evaluate Claimant's ankle impairment under the de minimis standard established in the Third Circuit, as he erred in

24

consideration of Claimant's testimony regarding her ankle pain and the resulting limitations it imposed.[22]

To establish that a "severe" impairment exists, a plaintiff must show his impairment is more than a slight abnormality and significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); Social Security Ruling ("SSR") 85-28. Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003) (quoting 20 C.F.R. § 140.1521(b)).

In the Third Circuit, the evaluation of an impairment's severity at step 2 is "a de minimis screening device to dispose of groundless claims." Newell, 347 F.3d at 546 (citing Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986)). A claimant's burden of proving a severe impairment at step 2 is "not an exacting one." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d. Cir. 2004). Although the regulatory language

---

[22] The ALJ omits Claimant's ankle impairment in his step 2 analysis, only stating that her "severe" impairments were Depression, Anxiety, and pulled back muscle. (R. at 18.) The ALJ evaluated the Claimant's ankle impairment at step 4 as part of his Residual Functional Capacity (RFC) assessment. (R. at 20-21.) However, a proper evaluation at step 2 might have affected the RFC assessment at step 4.

requires a finding of severity,[23] "an applicant need only demonstrate something beyond 'a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work.'" Id. (quoting SSR 85-28). "Reasonable doubts on severity are to be resolved in favor of the claimant." Id. at 547. The Social Security Rulings further instruct that "[g]reat care should be exercised in applying the not severe impairment concept." Id.

When reviewing all the evidence with respect to a plaintiff's impairments, the ALJ must also consider symptom-related limitations. See SSR 96-3p. The ALJ is required to give serious consideration to Plaintiff's subjective complaints of pain. Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986). However, "it is well established that the ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical and other evidence, regarding the true extent of the pain alleged by the claimant." Brown v. Schweiker, 562 F. Supp. 284, 287 (E.D. Pa. 1983) (quoting Bolton v. Sec'y of Health & Human Servs., 504 F. Supp. 288, 291 (E.D.N.Y. 1980)).

Additionally, the ALJ must indicate the basis for conclusions that the claimant's testimony is not credible. See generally Cotter v. Harris, 642 F.2d 700 (3d Cir. 1981). Where

---

[23] See 20 C.F.R. § 404.1520(c).

26

an ALJ properly determines the credibility of a claimant's subjective complaints of pain, the reviewing court should not substitute its own determination of credibility for that of an ALJ who had the opportunity to observe a claimant in person.  See Weir v. Heckler, 734 F.2d 955, 962 (3rd Cir. 1984) (recognizing that great deference is given to an ALJ's determination of credibility).  When a claimant's subjective complaints of pain indicate a greater severity of impairment than the objective medical evidence supports, the ALJ can give weight to factors such as physicians' reports, lay opinions and the claimant's daily activities.  20 C.F.R. § 404.1529(c)(3); SSR 96-7p (requiring the ALJ to "consider the entire case record and give specific reasons for the weight given to the individual's statements").

In this case, the ALJ failed to accurately consider Claimant's own testimony regarding her ankle pain and how it limited her ability to do basic work activities, and thus did not properly evaluate this impairment.  In his opinion, the ALJ notes that Claimant had fractured her ankle in August of 2000, (R. at 20), experienced delayed union of the fracture, (R. at 113), and that the fracture had healed with minimal deformity as indicated by x-ray on August 21, 2001, (R. at 115).  However, the ALJ appears to have misapprehended part of Claimant's testimony regarding her continued pain from the injury at her hearing on

27

February 7, 2005.  In testifying about her daily activities, Claimant stated "I don't really do walking.  I don't go anywhere. Too much pain.  I don't shop.  Like, Christmas just came.  I couldn't Christmas shop because of the pain."  (R. at 381.) Claimant's counsel then mentioned going to the mall, to which Claimant responded, "No, I can't do all that walking.  Can't. Because it's the ankle and the back. . . .  It starts killing me."  (Id.)  In the ALJ's opinion, however, the ALJ erroneously states that Claimant "said that she can walk and she goes to the mall but she does experience pain in her back and ankle."  (R. at 20.)  The ALJ considered this statement along with the objective medical evidence in finding that Claimant could do light-level work regardless of the ankle injury.  (Id.)

Although the ALJ does have discretion to find subjective reports of pain not credible, in this case, he simply misconstrued Claimant's testimony, minimizing the limitations/pain reported by Claimant.  Because the ALJ misstated Claimant's testimony in his opinion, his version of her reported daily activities seems to support his finding that the ankle impairment did not interfere with her ability to do light work, when in fact, her testimony runs contrary to this finding.  (R. at 20.)  When assessing the testimony upon remand, the ALJ may still find Claimant's statement regarding her ankle pain not credible when considered with the objective medical evidence, and

28

a reviewing court must defer to that finding. <u>See Weir v. Heckler</u>, 734 F.2d 955, 962 (3rd Cir. 1984). However, the ALJ must explain the basis for such a conclusion. <u>See generally Cotter v. Harris</u>, 642 F.2d 700 (3d Cir. 1981). If the ALJ chooses to disregard this testimony, he must provide an adequate explanation as to why it should be disregarded. <u>See, e.g., Adorno v. Shalala</u>, 40 F.3d 43, 43 (3d Cir. 1994). Should the ALJ find the testimony credible, this may indicate that Claimant's ankle impairment is "something beyond 'a slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work.'" <u>McCrea v. Comm'r of Soc. Sec.</u>, 370 F.3d 357, 360 (3d. Cir. 2004)(quoting SSR 85-28).

Because the ALJ failed to properly assess Claimant's testimony regarding her ankle pain, this Court finds that the ALJ's failure to consider the ankle impairment "severe" is not supported by substantial evidence. On remand, the ALJ should reconsider the Claimant's testimony regarding this impairment, and adequately explain any finding that the testimony is not credible.

        b.   Whether the ALJ Properly Evaluated the Opinions of Drs. Brown and Curran in Determining Claimant's Residual Functional Capacity

Claimant and the Commissioner both argue that the ALJ did not fully consider the reports of Dr. J. Theodore Brown, the consultative psychiatrist, and Dr. Jane Curran, the state agency

29

review psychologist, in determining that Claimant retained the
residual functional capacity ("RFC") to perform a full range of
light work.  The Court agrees with the parties that these reports
were not fully and accurately considered, and therefore the ALJ's
RFC determination is not supported by substantial evidence.

The sequential evaluation process for determining disability
requires an assessment of the claimant's functional limitations
and her remaining capacities for work-related activities,
referred to as the claimant's residual functional capacity
("RFC").  See SSR 96-8P.  A claimant's RFC represents her maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis.[24]  Id.  A
claimant's RFC is determined through a function-by-function
assessment of a plaintiff's physical abilities, mental abilities,
and any other abilities affected by his impairments and how
limitations regarding those abilities may affect his ability to
do work on a regular and continuing basis.  20 C.F.R. §§
416.945(b)-(d), 404.1545(b)-(d).  The assessment must include a
narrative discussion describing how the evidence supports each
conclusion, citing specific medical facts and non-medical
evidence.  Id.

_____

[24]  A "regular and continuing basis" means eight hours per
day for five days a week, or an equivalent work schedule.  See
SSR 96-8.

Third Circuit case law emphasizes "that there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting probative evidence in the record." Cotter v. Harris, 642 F.2d 700, 706 (3d. Cir. 1981); see also Kennedy v. Richardson, 454 F.2d 376 (3d. Cir. 1972) (vacating and remanding decision of ALJ which failed to explain rejection of medical evidence favorable to the claimant which was inconsistent with other evidence and ALJ's findings); Hargenrader v. Califano, 575 F.2d 434 (3d Cir. 1978) (remanding decision of hearing examiner for failing to address items of evidence in conflict with his findings). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d. Cir. 2000). "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" Id., (quoting Cotter, 642 F.2d at 705).

Regarding Dr. Brown's report, (R. at 175-78), the parties argue that the ALJ selectively cited the report in assessing Claimant's RFC. The ALJ characterized Dr. Brown's report as a "relatively benign set of examination findings." (R. at 23.) The ALJ stated that Dr. Brown's examination "support[s] a finding that the Claimant's concentration, persistence or pace is . . .

31

no more than mildly to moderately limited by her depression" and that "Claimant's depression and anxiety impairments do not preclude the performance of low level semi-skilled work such as the retail cashier job she performed in the past." (R. at 24.)

However, the ALJ failed to discuss or explicitly reject as not credible a different piece of Dr. Brown's report which appears to support a different conclusion. Dr. Brown specifically discussed Claimant's vocational functional capacities, and opined that

> [Claimant's] [a]bility to maintain attention and concentration, adequately relate to others, and appropriately deal with stress are compromised by symptoms of <u>poor attention and concentration, distractions of hallucinations, and low threshold tolerance for any pressure or stress.</u>

(R. at 177) (emphasis added). The Court agrees with the parties that this portion of the report is sufficiently contradictory to the ALJ's finding that Claimant had the RFC for low level, semi-skilled work, such as a cashier's job, that the ALJ must articulate his basis for discounting this evidence. <u>See Cotter</u>, 642 F.2d at 706. The ALJ's finding does not sufficiently consider Claimant's mental limitations, for even if he finds Claimant physically able to do low level, semi-skilled work, this does not address Dr. Brown's statement that Claimant has little mental capacity to handle any pressure or stress. Therefore, Dr. Brown's omitted statement should be addressed by the ALJ, as it

32

seems to indicate, contrary to the ALJ's conclusion, that Claimant might have difficulty performing such a job.

Regarding the evidence from Dr. Curran, Claimant argues that the ALJ made findings contradictory to those in Dr. Curran's Psychiatric Review Technique Form ("PRTF"), (R. at 210-223), even though he stated in his opinion that "Dr. Curran's assessment is well supported by the evidentiary record and entitled to considerable weight." (R. at 23.)   The Commissioner argues that although the ALJ did discuss the Psychiatric Review Technique Form, he failed to evaluate a Mental Residual Functional Capacity Assessment also completed by Dr. Curran, (R. at 202-205), which conflicted with his finding that Claimant had the RFC for a full range of light work.

The Claimant is correct in noting that the ALJ, while purporting to give great weight to Dr. Curran's opinion, found that Ms. Rivera was less limited than is indicated by Dr. Curran's PRTF.  Dr. Curran opined that Claimant was moderately limited in maintaining social functioning and moderately limited in maintaining concentration, persistence, or pace, (R. at 220), while the ALJ found that Claimant was only mildly limited in social functioning and mildly to moderately limited in concentration, persistence, or pace (R. at 23-24.)

In addition, the ALJ did omit mention of Dr. Curran's Mental RFC Assessment. Specifically, the Commissioner points to Dr.

33

Curran's statement that "Claimant . . . could adapt and relate adequately to work in a <u>low contact setting</u>."  (R. at 205) (emphasis added).  This statement, similar to the omitted opinion of Dr. Brown, is somewhat contradictory to the ALJ's finding that Claimant had the RFC for low level, semi-skilled work such as her former cashier's job, especially considering a cashier's frequent contact with the public.  Although the ALJ may certainly disregard these statements from Drs. Brown and Curran as not credible, under <u>Burnett</u>, he must address his reasons for doing so.  220 F.3d at 121.  The ALJ must explain why probative evidence supportive of Ms. Rivera's claim that conflicts with his findings should be rejected.  <u>See</u> <u>Cotter</u>, 642 F.2d at 706-707 (remanding where ALJ failed to explain his rejection of or even acknowledge the presence of medical testimony supportive of the claimant which conflicted with testimony he accepted).

Because the ALJ failed to evaluate or explain his rejection of parts of Dr. Brown and Dr. Curran's records which could reasonably support Claimant's disability claim, the ALJ's determination of Claimant's RFC is not supported by substantial evidence.

     c.   Whether the ALJ Properly Determined if
           Claimant Could Return to Past Relevant Work

Claimant and the Commissioner both argue that the ALJ erred by failing to consider the actual demands of her past relevant work in determining that she retained the residual functional

capacity to perform it, therefore adjudging her not disabled at
Step Four of the sequential analysis.  Because the ALJ omitted
any discussion of Claimant's testimony regarding the actual
demands of her former cashier position, the Court agrees that the
ALJ did not properly consider whether Claimant's limitations
would allow her to perform the actual demands of her past
relevant work.

The function-by-function assessment of the claimant's RFC is
used at Steps Four and Five of the sequential evaluation process
to determine whether the claimant is able to do past relevant
work or other work which exists in the national economy.  20
C.F.R. §§ 416.945(b)-(d), 404.1545(b)-(d).  Step Four of a
disability evaluation involves three substeps.  The ALJ must 1)
determine the claimant's RFC, 2) determine the physical and
mental requirements of the claimant's past relevant work, and 3)
compare the claimant's residual functional capacity to the
requirements of that past relevant work.  See Burnett v. Comm'r
of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000); Winfrey v.
Chater, 92 F.3d 1017, 1023 (10th Cir. 1996).  Past relevant work
is 1) substantial gainful activity (i.e. activity of the type
usually paid for) 2) done by claimant within the last fifteen
years 3) for a time long enough to develop the skills involved.
20 C.F.R. §§ 404.1565, 404.1572 .  Social Security Ruling 82-61
characterizes past relevant work in two ways: 1) the job as

claimant performed it or 2) the job as workers generally perform it in the national economy.  The ALJ may use the descriptions in the Dictionary of Occupational Titles ("DOT") to determine how workers perform the job in the national economy, however, the claimant should be the primary source for information about the functional demands of past relevant work.  SSR 82-61; SSR 82-62 (holding that DOT descriptions utilized should be "supplementary and corroborative" of the record).

Third Circuit case law confirms the importance of carefully considering the claimant's testimony regarding the actual demands of her past relevant work.  In Adorno v. Shalala, the Third Circuit remanded when the ALJ found that an asthmatic claimant could return to her former job provided she was not exposed to fumes and dust, even though the claimant's undisputed testimony showed that her former job as a machinist required exposure to fumes and dust.  40 F.3d 43, 46 (3d Cir. 1994).  See also Brewster v. Heckler, 786 F.2d 581, 585-86 (3d Cir. 1986) (holding that ALJ's finding that claimant could return to former job based on a non-examining physician's opinion that claimant could stand and/or walk for six hours per day was not supported by substantial evidence when claimant testified his former job required seven hours a day of walking).

In this case, the ALJ found that Claimant retained the physical RFC to do light work, (R. at 20), which "involves

lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds." 20 C.F.R. § 416.967(b). The ALJ only assessed the demands of Claimant's past relevant work as a cashier in a generalized manner, finding that the position is performed at a light exertional level. (R. 24.) The ALJ also referenced the Dictionary of Occupational Titles[25] to support this finding. (R. at 18.)

However, the ALJ failed to address or consider Claimant's own testimony regarding the actual demands of her past job as a cashier. Claimant stated in a SSA Disability Report that her job as a cashier required her to lift/carry twenty-five to fifty pounds, (R. at 72), which exceeds the requirements of light work as defined by both the regulations and the DOT. The omission of any consideration of Claimant's own testimony regarding her past relevant work runs afoul of SSR 82-62, which states that the claimant should be the primary source for information about the functional demands of past relevant work.[26] The ALJ may weigh

_____

[25] "Cashier-checker" is listed in the Dictionary of Occupational Titles as light work, defined as "exerting up to twenty pounds of force occasionally, and/or up to 10 pounds of force frequently . . . ." Dictionary of Occupational Titles § 211.462-014, App. C (4th ed. 1991).

[26] SSR 82-62 further states "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" On

37

the credibility of Claimant's testimony, but must explain any rejection of it. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d. Cir. 2000).

As discussed supra, the ALJ's assessment of Claimant's mental RFC was incomplete because he did not properly evaluate the records from Dr. Brown and Dr. Curran.  Therefore, the ALJ's determination that Claimant could meet the mental demands of her past relevant work was likely tainted.  On remand, the ALJ should reassess whether Claimant has the mental RFC for her past cashier job based on a proper evaluation of the Brown/Curran records as directed supra.

If the ALJ finds on remand that Claimant could not perform her past work during the relevant time, he will proceed to the Step Five analysis of whether Claimant was capable of performing any job in the national economy.  Because the record has not been adequately developed on that issue, this Court cannot make a benefits determination.  See Gilliland v. Heckler, 786 F.2d 178, 184-85 (3d Cir. 1986) (holding that district court should only award benefits if administrative record is fully developed).  Because the ALJ has not sufficiently developed the administrative

_____

remand, the ALJ should first make a proper determination of Claimant's ability to return to her job as actually performed. If he determines she cannot, he may then consider whether she could perform the job duties as generally required in the national economy.

record of Claimant's case, the Court will remand this matter in order for the record to be developed accordingly.

        d.    Whether the ALJ Improperly Omitted Evidence of Claimant's Spinal Impairment Submitted After the Hearing

The Claimant argues that the ALJ failed to consider certain evidence from rheumatologist Dr. Steven Soloway regarding her back impairment, and thus mischaracterized the impairment as "a pulled back muscle." Because this evidence was not timely submitted to the ALJ under the regulatory guidelines, the Court finds that the ALJ was not required to consider it in his decision. Claimant also fails to show that any evidence from Dr. Soloway meets the requirements for a remand to the Commissioner to consider new evidence under Sentence Six of 42 U.S.C. § 405(g).

The evidence at issue consists of three items: an x-ray report from January 13, 2005, showing apparent fusion of the left sacroiliac joint and Dr. Soloway's initial impression that Claimant had spondylo arthropathy, (R. at 327); an office note on January 24, 2005 in which the doctor opined that Claimant's fused left sacroiliac joint might indicate several conditions, including ankylosing spondylitis, (R. at 324); and an MRI report on February 11, 2005, which again showed partial ankylosis of the left sacroiliac joint and indicated Claimant's possible spondylo arthropathy. (R. at 317).

At Claimant's hearing on February 7, 2005, the ALJ granted Claimant's request to leave the record open until February 21 to await missing medical records from gastroenterologist Dr. Gary Metusow. (R. at 371-72.) Claimant did not indicate that she was awaiting or intended to submit the three records from Dr. Soloway as well. Claimant did not submit these records to the ALJ until February 23, 2005, after the ALJ had closed the record on February 21. (R. at 316.)

The Commissioner's regulations provide that "[a]ll evidence upon which the administrative law judge relies for the decision must be contained in the record, either directly or by appropriate reference." 20 C.F.R. § 405.360. Generally, all written evidence must be submitted no later than five business days before the scheduled hearing. Id. at § 405.331(a). However, the regulations further provide:

> If you miss the [five-day] deadline . . . and you wish to submit evidence after the hearing and before the hearing decision is issued, the [ALJ] will accept the evidence if you show that there is a reasonable possibility that the evidence, alone or when considered with the other evidence of record, would affect the outcome of your claim, and: (1) Our action misled you; (2) You had a physical, mental, educational, or linguistic limitation(s) that prevented you from submitting the evidence earlier; or (3) Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from submitting the evidence earlier.

40

Id. at § 405.331(c).  Claimant submitted the three records at issue on February 23, 2005, after the hearing and the closing of the record but before the ALJ issued his decision.  (R. at 316.) An attached cover letter simply stated that Claimant was submitting further medical evidence and listed the records, but did not offer any of the reasons for late submission required by the regulations.[27]  (Id.)  Therefore, because the record does not show that Claimant properly sought or received permission from the ALJ to submit the records from Dr. Soloway, this Court finds that the ALJ's omission of these records in his decision was not error. See 20 C.F.R. § 405.331(a).

After the Appeals Council denied Claimant's initial request for review of the ALJ's decision on November 17, 2005, (R. at 309-311), Claimant requested reconsideration of the denial on January 19, 2005.  (R. at 313.)  With this request, Claimant re-submitted the three records.  (R. at 328-361.)  This Court may remand the case to the Commissioner to consider new evidence not previously presented to the ALJ as authorized by 42 U.S.C. § 405(g). Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  Since

---

[27]  Two of the records at issue, the January 13, 2005 x-ray report and the January 24, 2005 office note, predate the February 1, 2005 report from Dr. Metusow for which the record was specifically left open.  Thus it would seem initially that Claimant's counsel would have known of these records and mentioned them at the hearing as well.  However, as discussed above, Claimant's counsel gave no explanation for the timing of their submission to the ALJ.

41

Claimant did not properly submit the records from Dr. Soloway to the ALJ, this Court will consider them as "not previously presented to the ALJ." § 405(g).

Sentence Six of § 405(g) provides that the Court may "at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . ." Matthews, 239 F.3d at 594 (quoting 42 U.S.C. § 405(g) (2006)). The Third Circuit has held that three elements must be shown before a case may be remanded for consideration of new evidence under § 405(g). Szubak v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). First, the evidence must be "new" and not merely cumulative of what is already in the record. Id. Second, the evidence must be "material," meaning that the evidence is relevant and probative, and there is a reasonable possibility that the new evidence would have changed the outcome of the determination. Id. Materiality also requires that the new evidence "relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id. Finally, the Claimant must demonstrate "good cause" for not having incorporated the new evidence into the record at the administrative proceeding. Id. at

42

834.  The Third Circuit recognized in <u>Szubak</u> that "claimants should generally be afforded only one fair opportunity to demonstrate eligibility for benefits under any one set of circumstances." <u>Id.</u>  This reflects Congress' concern that claimants may seek remand for new evidence as an end-run method to appeal adverse rulings, and be tempted to withhold evidence in hopes of "obtaining another bite of the apple." <u>Id.</u> (quoting <u>Brown v. Schweiker</u>, 557 F. Supp. 190, 192 (M.D. Fla. 1983)).

Although Claimant does not specifically argue under Sentence Six of § 405(g), her brief alludes somewhat to newness and materiality, stating that Dr. Soloway's records "show[] that, far from a 'pulled back muscle,' Ms. Rivera suffers from a very painful inflammatory disorder of the spine which accounts for her complaints." (Pl. Br. at 18.)  Claimant argues that this evidence would corroborate her treating physician Dr. Rhyme's opinion that she was only able to do part-time sedentary work, which was found not credible by the ALJ.  (R. at 22.)

However, this Court need not determine whether this evidence can be considered new or material, because Claimant fails to demonstrate good cause for not previously presenting this evidence to the ALJ as required under <u>Szuback</u>.  As discussed <u>supra</u>, the record shows that Claimant did not submit the records from Dr. Soloway in a timely fashion under the Commissioner's regulations, and did not seek permission from the ALJ for a late submission.

43

(R. at 316.)  Claimant also does not argue in the instant case
that she had good cause for not timely presenting these records.
The records reflect appointments with Dr. Soloway taking place
both before and shortly after the February 7, 2005 ALJ hearing.
Thus, Claimant had fair opportunity to submit them at the hearing
or to request that the record be held open for their receipt, as
it was for Dr. Metusow's records.  Therefore, the Court finds that
records from Dr. Soloway cannot be considered as new evidence on
remand.

        e.    Whether the Commissioner Should Re-Adjudicate
            Claimant's Subsequent Disability Determination
            on Remand

The parties agree that the case should be remanded, but
disagree on the proper scope of the remand.  The Commissioner
seeks on remand to reopen a subsequent SSI claim in which Claimant
was found to be disabled beginning December 1, 2005.  The
Commissioner states that the Appeals Council will instruct the ALJ
to resolve inconsistencies between the evidence in the instant
claim and the subsequent claim, re-adjudicate the entire period,
and issue a new decision.  Plaintiff argues that this is improper,
as the case before this Court concerns only Claimant's February
22, 2002 SSI application, and no aspect of the Commissioner's
final decision on the subsequent 2005 application has been placed
before this Court for review.  This Court agrees with Claimant
that any remand of the instant action should concern only the

44

February 22, 2002 SSI application, but cannot comment on whether
the Appeals Council may re-open the 2005 decision of its own
accord.

Under the Social Security Act, a party may seek judicial
review of a final decision of the Commissioner of Social Security
by filing a civil action in the U.S. District Court for the
judicial district in which they reside within 60 days of the
decision.  42. U.S.C. § 405(g).  This is the sole method for
obtaining judicial review, as the Act further states that "no
findings of fact or decision of the Commissioner of Social
Security shall be reviewed . . . except as herein provided."  Id.
at § 405(h).  Claimant was adjudged disabled as of December 1,
2005 in a subsequent SSI application.  (R. at 6.)  Since no action
has been filed with this Court regarding that decision, the Court
agrees with Claimant that any remand of this action should concern
only the February 22, 2002 application.

The Commissioner has promulgated regulations outlining the
Administrative Review Process for SSI claims.  See 20 C.F.R. §§
416.1466-1482.  The Appeals Council may decide on its own motion
to review an ALJ's decision anytime within sixty days after the
date of the decision.  Id. at § 416.1469(a).  Once the
administrative review process is complete, the ALJ's decision
becomes binding unless a party files an action in the proper U.S.
District Court.  Id. at § 416.1481.  The regulations also provide

45

for the reopening of final decisions by the Appeals Council.  <u>See</u> <u>id.</u> at §§ 416.1487-1489.  The Appeals Council may decide to reopen a final decision under certain conditions, either at the claimant's request or on its own initiative.  <u>Id.</u> at § 416.1487(b).  The decision may be reopened within one year of the date of the notice of initial disability determination for any reason, within two years of that date for good cause,[28] or at any time if the decision was obtained by fraud or similar fault.[29]  <u>Id.</u> at § 416.1488(a)-(c).

Claimant urges that the Commissioner must make an independent determination which meets the criteria imposed by the above regulations if it wishes to reopen the December 2005 SSI claim. This Court agrees, but cannot comment on whether such an attempt would be proper.  Not only is the December 2005 claim not properly before the Court, but the record in the instant claim contains no information regarding the December 2005 claim other than the fact that Claimant was adjudged disabled as of December 1, 2005.  (R. at 6.)  Since the timeliness of an Appeals Council reopening is

---

[28] "Good cause" may be found if new and material evidence is furnished, a clerical error was made, or the evidence that was considered clearly shows on its face that an error was made.  20 C.F.R. § 416.1489.

[29] The presence of "fraud or similar fault" is determined by considering any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) which claimant may have had at the time.  20 C.F.R. § 416.1488(c).

46

measured from the date of the initial disability determination, which is not in the record of the instant case, it is not for this Court to determine if a reopening would be timely.

## III. CONCLUSION

For the reasons stated above, this Court shall remand to the ALJ with instructions to (1) reevaluate the severity of Claimant's ankle impairment with accurate consideration of Claimant's testimony, (2) properly evaluate the records of Drs. Brown and Curran in assessing Claimant's mental RFC, explaining any disregard of portions that contradict his findings, and (3) reevaluate whether Claimant can perform her past relevant work with consideration of her own testimony regarding its actual demands.  The ALJ must confine his determinations on remand to Claimant's February 22, 2002 SSI application, as her subsequent December 2005 application is not properly before this Court.  The accompanying Order on remand is entered.


August 8, 2008
DATE

JEROME B. SIMANDLE
United States District Judge


47